■ ELINOR GUGGENHEIMER, as Commissioner of the Department of

Consumer Affairs of the City of New York, Appellant, v RALPH GINZBURG, Doing Business as WEBSTER'S DICTIONARY COMPANY, Respondent.—Order, Supreme Court, New York County, entered October 3, 1975, affirmed, without costs and without disbursements. This case is much ado about very little. The complaint sums up to an accusation that a pitchman has hawked his wares with traditionally vigorous puffing. Without a single person coming forward to complain of having been deceived either as to authenticity of the article sold—a "Webster's Dictionary"—or its price, plaintiff-appellant commissioner has sought to enjoin defendant-respondent, who does business as the Webster's Dictionary Company, from continuing his present method of merchandising. It is required for any temporary injunction that a clear right to the relief sought must be demonstrated. *(Hartford v Resorts Int.,* 43 AD2d 828.) Special Term denied a temporary injunction and, additionally, *sua sponte* dismissed the complaint. The complaint, drawn pursuant to section 2203d-1.0 (ch 64, tit A) of the Administrative Code of the City of New York, claims outright deception in advertising, though no one has been identified as having been so deceived. A summation of puffings is not deception when none of the factors is demonstrated to be such. It is not deception to call the dictionary by Webster's name any more than it could be argued that sale of a certain outer garment as a mackintosh is a representation that it was manufactured by the long deceased Charles Macintosh. In each instance, the name is now generic. Nor is it deceptive to refer to the volume as "authentic Webster's;" as properly observed at Special Term, the phrase suggests "a work following the tradition of Noah Webster and the lexicography that the name represents." Nor, in the circumstances disclosed, is it deceptive to portray the quoted charge for the book as the result of "an incredible price slash." Nowhere does defendant present himself as a publisher, a strained interpretation of this rather windy piece of publicity, but it would seem to make no difference to a purchaser from whom he bought the book if the quoted price was attractive enough. This cannot be taken any more seriously than the representation that "it is the most comprehensive, utilitarian, entertaining volume ever published." No clear right to injunction appears. Special Term dismissed the complaint as failing to state a cause of action. Arguably, it does. However, a pragmatic view indicates but a slim chance of ultimate success. This disposition must be examined in the light of a condition set down in the memorandum decision. The actual title of the volume sold uses the prefixal words "The Living," followed by the rest of the name: "Webster's Encyclopedic Dictionary of the English Language." Though we consider the difference *de minimis,* Special Term has insisted that the proprieties demand complete identity between the title as advertised and as it appears on the work itself. Defendant has been directed to adjust future advertising accordingly, with the right reserved to plaintiff to commence the action anew if there is failure so to comply. As a matter of discretion, we allow the condition to stand as providing an avenue for plaintiff to proceed anew should circumstances develop to justify that action. Concur—Stevens, P. J., Markewich and Murphy, JJ.; Silverman and Nunez, JJ., dissent in the following memorandum by Silverman, J. This case presents a classic instance of a commercial advertisement as to part of which an argument can be made that it is true, but which read as a whole is plainly misleading and dishonest. The defendant is an individual who apparently solely for the purpose of selling the dictionary here involved uses the name Webster's Dictionary Company. He is a distributor not a publisher. The body of the advertisement here involved, after a heading which I shall refer to, starts

out: "Because of the depressed economy, most book publishers are in financial trouble. The Webster's Dictionary Company is no exception. And just as the major auto companies have taken drastic steps to improve sales, we hereby announce an incredible price slash on our 1,454-page, eight-pound, 158,000-definition, 300-page-encyclopedia-supplemented, full-color-embellished, $39.95 list-price, paragon-of-the-publishing-industry, Webster's Encyclopedic Dictionary of the English Language: *ONLY $19.95!!"* It may well be that the first sentence is true. The next sentence that the Webster's Dictionary Company is "no exception" surely implies that defendant is a book publisher in financial trouble. In fact defendant is neither a book publisher nor is there any evidence that he is in financial trouble. The next sentence carries this misleading inference further; it says: "And just as the major auto companies have taken drastic steps to improve sales, we hereby announce an incredible price slash on our 1,454-page * * * paragon-of-the-publishing-industry, Webster's Encyclopedic Dictionary of the English Language: *ONLY $19.95!!"* The major auto companies are manufacturers who have presumably cut their prices. The implication is that defendant is a manufacturer or publisher who has cut his prices on his "paragon-of-the-publishing-industry." "Just as the major auto companies" have done "we hereby announce an incredible price slash." Defendant is not slashing any prices at all. He is selling the books at a profit and in this litigation nobody disputes it. While there is some hearsay evidence that there have been sales in Texas and Chicago at $39.95, it is plain that in the New York area these books never sell for more than $19.95. A person reading this advertisement would believe that he is being offered bargains inherent in a liquidation sale by a financially hard pressed seller. That would be a complete misapprehension, a misapprehension deliberately induced by the language here used. The heading in bold type proclaims: "THE AUTHENTIC WEBSTER'S * * * $39.95 DICTIONARY NOW ONLY $19.95!" Thus again the reader is led to believe that he is getting an article which normally sells for $39.95 at half that price. The phrase "The Authentic Webster's" must fairly mean to many unsophisticated readers that there is an "authentic," i.e., the original or genuine Webster's dictionary of which perhaps others are imitators and that this is it. It is not an answer to say that a sophisticated reader would know that Webster's is a generic term for any American dictionary of the English language, and that there is no "authentic" Webster's dictionary in the sense of an original genuine article of which others are imitations; or that defendant is not saying in so many words that he is a book publisher in financial trouble; or that defendant is not saying that he is slashing his prices, but is merely announcing somebody else's reduction from an essentially unrealistic list price to a realistic price of $19.95 for which the book can be obtained anywhere. This language was written in the hope of deceiving the public, avoiding only explicit, direct lies. The order appealed from should be reversed and defendant should be enjoined from using this advertisement, or from using any advertisement in which defendant claims or implies that his product is *"the* authentic Webster's"; that the prevailing price or value of the book is $39.95; that defendant is the publisher of the book or is in financial trouble; or that defendant is cutting the price on the book.